We have six cases on our calendar this morning, three patent cases and three cases from the Court of Federal Claims. Two of them, the first case involving sanitation permits, will be submitted under briefs and therefore not be argued. The first case that will be argued is FIBER OPTIC Designs v. BTO in Seasonal Specialties. This is established in 2012-10-58. This case is on appeal from a decision by the Board of Patent Appeals and Interferences on an inter-parties re-examination. This patent is directed to light strings, specifically Christmas light strings, but even more specifically, light strings made out of light-emitting diodes. We did invent light-emitting diodes. Our background of our patent specification describes various patents that are Christmas light strings using LEDs. What our invention is, is that LEDs are basically DC rated components. The evidence shows that. The background of our patent specification talks about these prior LED Christmas lights and the fact that they use rectifying circuits, other circuitry to linearize the AC input being used to drive the light string. Isn't your invention really a mathematical formula that you came up in order to achieve your AC summation? It is the recognition that LEDs do have an AC rating and then using that AC rating in a formula to create a balanced light string that works in a stable manner as a customer would want. So what's novel is the application of the formula? What's novel is the application of the AC rating of LED components. Summing those AC But your moral reference is the key reference, isn't it? Yes it is. Doesn't that involve AC? It does. So what's wrong with a patent office rejection? Okay, before our client discovered or realized that LEDs could be rated for their AC rating, no one had ever known that before. So when you take a LED that has a 2 volt rating and the evidence will show that before our client discovered AC ratings, there was no mention by anyone in any prior document of an AC rating for an LED. But there was a mention that when you had 52 volt LEDs in a string that a resistor was apparently unnecessary. Correct. I could see that it's most likely that Yamura built a light string with 52 volt LEDs and plugged it into a 100 volt socket in Japan. Their standard outlet is 100 volts. I could see it. He says it appears that it would work. However, experience shows that the circuit will not be stable. That's exactly what happens. It's unstable. The spike, the up and down of the AC current will eventually cause all those LEDs to blow up. Was this evidence presented to the PTO in the form of a declaration or an affidavit? Yes. As a matter of fact, our inventor built the Yamura light strings or an equivalent. He didn't have a 100 volt. He built 120 and used the same formula in Yamura with 2 volt DC and the light string blew up. We actually presented the video as part of our evidence and the transcript of those tests are provided beginning at A1308. We provided the transcripts of the video. So, the best we could do was try to build what Yamura said he had and we showed that it was unstable, light started popping, eventually the whole light string died. Then he inserted the equivalent resistor into the Yamura circuit, worked fine. And that proves that Yamura did not recognize. First of all, Yamura is silent about whether these 2 volt LEDs are DC or AC. Silent. And I think it's telling that there's not a single prior art document in the entire record. We've been going around with this for 10 years. What choices would a person of ordinary skill in the art have to choose from? It's not a long panoply, is it? I'm sorry? It's either AC or DC. That's correct. But if you have a DC component, I think of my train set when I was a kid. I had my train set and we had that big black box that I used to dial the speeds. That was The requester submitted evidence of its own in the form of an expert declaration and I point to A2079 and 2080 where it specifically addresses this issue. 2080 is where I am right now. It says, because current limiting resistors are cheaper and have linear, a person's skill in the art would be motivated by economics to compensate with resistors instead of the more expensive LEDs when trying to balance the light string. So, the record itself shows that when someone's faced with this problem, okay, my light string's not working, what am I going to do? They're going to use rectifying circuitry, resistors, something else. They're not going to turn to adding additional LEDs. That's the requester's evidence, not my evidence. You said that, I believe you said your mirror involves AC current, then I thought you said DC current. Which is it? Okay, your mirror has two different bodies. AC in figures 1 and 2, DC in figures 10A and 10B. But what's really at issue here is figures 1 and 2. It has a wall outlet that's 100 volts AC. And then he has a light string with 52 volt LEDs. He doesn't say AC or DC. If, I concede, if your mirror had said 2 volt AC and he had 50 of them plugged into the wall, it would have worked perfectly. There wouldn't be a need for a resistor, it would have been stable. But he plugged it in and it wasn't stable. And therefore he did what every electrical engineer would do. You would condition that circuit to be stable. And he did what the citation I just pointed to and everyone else did. They used some type of circuitry, resistors, rectifiers, something else. They didn't use additional LEDs to balance out the circuitry. That's what we are doing in this claim and that's what this invention is all about. So the patent office is relying on Yamira almost exclusively. And the patent office is made of a conclusion that Yamira does disclose AC summation. They say it right in the opinion. It does. But they base it on speculation. They use words like it implies it. It says it occurs naturally because AC, of course it occurs naturally, but no one knows what's happening there until our client took the time and effort to figure it out. And then the patent office says a skilled artisan would have progressed to get to this point without any, if they pointed to something, anything that would be helpful and persuasive, but they have nothing. Instead they rely on three things. And this is at page nine of their brief. One, the power supply is AC. Therefore it has to be AC rated. Well we already know that LED, we didn't invent LED Christmas lights. People have been plugging LED Christmas lights into an AC circuit for many, many years before us. But they had to condition it to work. Secondly, they said, well 50 LEDs times 2 volts equals 100 volts AC. It has to be AC. Once again, you're making a leap there that is not found in the prior art anywhere. And the telling thing they point to is that it says Yamira states resistance apparently seems unnecessary. So they're saying, well aha, he says it must be unnecessary. No, it isn't. And then Yamira says, and I quote, however it is proved from experience that the apparatus is stable in function by providing the resistance 8. Therefore the resistance 8 is connected to the circuit shown in figures 1A and 1B. I concede he most likely built that circuit. 50 LEDs, 2 volt something each, plugged it into a 100 volt outlet and got an unstable circuit that most likely resulted in LEDs that, what the video calls popping because they just go out. They blow up. They blow out like a light bulb blows out. It seems to me that your argument is premised on the notion that Yamira discloses only DC summation. Do I have that right? Yamira doesn't explicitly state anything. But that's what your argument is that those 2 volts are DC. Those are 52 volt DC LEDs. But Yamira never really says that, does it? No, it doesn't. In fact, the board concluded that Yamira, that the ratings were DC ratings or rather VAC. AC. Right. Based on no evidence other than speculation. They concluded from 100 equals 50 times 2 that it had to be AC. If it was AC it would have been a stable circuit. They wouldn't have needed, he said necessary to be stable. He wouldn't have needed that resistance circuitry to linearize the AC drive voltage. You can save the rest of the time if you want or you can continue. There was only one other point I wanted to make. We've talked about Yamira. Yamira has a second embodiment. Figure 10 is a DC. It's a battery. I think he talks about it used on a construction site. It's a 24 volt battery. He talks about 10 2 volt LEDs and the need for a 4 volt resistor. Now, DC circuits follow Ohm's Law directly. You sum up what's going around the circuit and it's going to add up to the input. 2 times 10, 20 plus 4, 24 exactly matches the DC drive circuit. Exactly matches it. Conversely, figure 1, 50 times 2 exactly matches. Why isn't Ohm's Law applicable there? He never mentioned the need for any other additional circuitry or being unstable because he's recognizing DC works perfectly. He's using DC LEDs. He makes no distinction to figure 1 except that it's unstable, it won't work. Therefore, we need additional circuitry. It's a huge distinction right in Yamira. I will reserve the rest of my time. The discussion of appellant focuses on this issue of why a resistor is necessary. I refer the court to the same page of the joint appendix that he referred to. Why would you use a resistor if everything adds up and is in balance? Well, there's a very practical reason for that, which is the power coming through the wall in your home varies. It can vary widely. In fact, the LED components, the voltage they use can vary widely. There's another separate reason to use a resistor that has nothing to do with the summation that's going on in the textbook. That's the practical reality for the power coming through the wall. That doesn't defeat what Yamira was describing in how it would design a basic light string. It isn't a coincidence that 100 VAC is coming through the wall and 52 volt LEDs are being used. Appellant is asking this court to believe that the inventor of this patent, this patent that's enabled and was approved by the United States Patent Office, didn't understand basic concepts of electricity, the difference between AC and DC. These basic concepts are discussed in the board's opinion, citing electrical engineering textbooks. The question before this court is whether the light string described in the 358 patent is anticipated essentially by an identical light string and structure in the Yamira patent. And the answer is yes. The only difference between Yamira's light string and the light string in the patent is just the failure to use the words AC summation. But we know AC summation is happening. The inquiry that we need to focus on is the structure of the light string plus the knowledge of a person of ordinary skill in the arts. So would someone of ordinary skill in the arts, would an electrical engineer or an electrician be able to construct a basic Christmas tree light string with LEDs using the Yamira patent? And the answer is yes. And would there maybe some experimentation, add one LED, take away one LED to come up with a string? It's possible. But that doesn't defeat anticipation in this case. In fact, the presence or absence of a resistor is surely irrelevant in this case because, as this court may be aware, six years ago, FiberOptic came and said, OK, we have an infringement case against a company that's producing LED light strings. And their LED light strings have resistors. And that entity, Seasonal Specialities, came and said, no, no, no, look at their patent. They've got the perfect summation. They don't need resistors. So we can't be infringing. We'll use resistors. And FiberOptic came to this court and said, our light string, our summation, is consistent with the use of resistors. Now they come to the court and they say their smoking gun evidence of why Yamira doesn't anticipate the patent is, aha, look at the presence of a resistor. They can't have one claim construction for purposes of infringement and another claim construction for purposes of anticipation. So in conclusion, the court would just say that in an anticipation scenario, the question here is, is there enough evidence that a reasonable mind can accept to be adequate to support the board's conclusion? And based on the express disclosures in Yamora and the basic engineering principles cited by the board, the PTO argues that there is more than adequate basis to support the board's finding. Thank you, Your Honor. No one ever loses a case because they didn't use up all their time. We have your case. Thank you, Your Honor. The minutes established as rebuttal time. Well, now we all know that the Patent Office is using Yamira and Yamira exclusively to reject us. So, there's no, if it was so simple, there'd be something else. If they were relying on textbooks from the 60s and 70s, they were relying on Ohm's Law, which, by the way, came into existence before we discovered alternating current. They talk about Kirchhoff's Law, which, by the way, came into existence before we discovered alternating current. They can't point to anything. There's a big hole in the mirror. The only thing we know is it doesn't work without a resistor. That's because he's using DC summation, not AC. Now, with respect to the arguments presented to this court six years ago or whenever, it exactly focuses in on the point. Our patent, we don't care about a resistor in the light string or not a resistor in the light string. We're talking about AC summation of individual electrical components, and that's what the court ruled when it issued its decision back then. It said, Thus, claim one could be interpreted consistent with the language and the specification to permit current-limiting circuitry within the electrical component. These additional current-limiting features would then count as, I'm at A284, would then count as part of the summation if the resistors were inside each individual light socket. Alternatively, claim one could be interpreted consistent with the language and the specification to permit current-limiting circuitry outside the electrical component, like your mirror. In that case, those additional current-limiting features would have nothing to do with the summation of each individual electrical component. So we have sockets with lights and whatever's inside that LED, and we've got a string of them. We're summing those. What happens upstream, downstream, we don't care. If you use AC summation for that set, that string, that series of lights, that's what our claim is directed to. So the fact that we argued the resistor in this court, whether there's a resistor in here or not, is irrelevant for infringement. What that's telling us is that Yamira is using DC summation. If he was using AC summation, he wouldn't need a resistor. So the resistor, we're not trying to cover the Yamira light string, because Yamira is purely and wholly directed to DC summation. There's no evidence to change that fact. Yamira says it himself, just implicitly. They want to say, well, any engineer can figure it out. Well, no one else has. So if it's that simple, I'm sure someone else would have figured it out. I'm out of time. Thank you, Mr. Stavish. I don't know whether it's LED or whether without a resistor, but as you've noticed, your time is up. Thank you very much. Take the case and revise it.